In the Matter of the Petition of JOHN J. ROONEY for the Removal of JOSEPH WIENER, as General Guardian of MURRAY A. WIENER, an Infant.

Surrogate's Court, Kings County, January 16, 1933.

*John J. Rooney,* special guardian.

*Siegeltuch, Butler & Kraft,* for the general guardian.

WINGATE, S. This is an application by a special guardian appointed by order of this court for the removal of the general guardian of an infant on the grounds that he (1) has failed to file the annual report due in January, 1932, required by section 190 of the Surrogate's Court Act; and (2) has improperly invested the trust funds in his hands belonging to the infant's estate.

The first allegation is not denied and stands proved by the records of the court itself. The second question is submitted for decision as a matter of law, on admitted facts.

The infant was born on June 24, 1916. His mother predeceased his father, who died on October 14, 1931. On the twenty-seventh of November of that year, Joseph Wiener, a brother, was appointed guardian jointly with the clerk of the Surrogate's Court as the

result of a petition alleging that the estate of the infant was less than $500. On the tenth of the following February this order was modified by eliminating such joint control and substituting therefor a surety company bond of $14,000, upon a showing that the infant had come into further funds not exceeding that sum. No exact statement of the amount of the infant's property has ever been submitted to this court.

It has been made to appear by photostatic copies that on December 23, 1931, at the time the infant was of the insurable age of fifteen years, the latter and the guardian jointly executed an application to the Prudential Insurance Company of America for the issuance of a fifteen-year endowment policy of insurance on the life of the infant in the sum of $15,000, the premium for which was payable in a single lump sum of $10,233.30. The principal of this policy was made payable to the infant if living at the termination of the endowment period, " or, in case of the prior death of the Insured " to the guardian as an individual. It is alleged and not denied that this premium of $10,233.30 was paid by the guardian from the funds of the infant. It is hardly necessary to add that such payment was made without the approval of this court.

At the time of the appointment of the guardian, the next of kin of the infant were the guardian, who was his brother, and a sister, Florence Wiener. Although the facts in this regard, at the time of the issuance of the policy and the payment of the premium, have not been made to appear, they are presumptively the same as those then existing. (*Matter of Auditore*, 136 Misc. 664, 672; affd., 233 App. Div. 740, and cases cited.)

The investments of the funds of a ward which may lawfully be made by a guardian are, in section 85 of the Domestic Relations Law, limited to those authorized for executors and administrators. Such fiduciaries are, in turn limited by the provisions of section 111 of the Decedent Estate Law which is to be construed with section 239 of the Banking Law. As Surrogate Foley points out in *Matter of Vanderbilt* (129 Misc. 605, at p. 607): " There is no statutory authority for the guardian to invest, or the surrogate to countenance the investment of the funds of the ward in policies of life insurance."

This fact is not altered by the provisions of section 55 of the Insurance Law inhibiting a minor from pleading his infancy in certain connections affecting an insurance contract, nor by the decisions which have determined that a request by an infant to another to pay a premium thereon, followed by its actual payment,

will furnish a cause of action against the minor. (See *Hamm* v. *Prudential Insurance Co.*, 137 App. Div. 504; *Equitable Trust Co.* v. *Moss*, 149 id. 615; *Collins Co., Inc.*, v. *Wacher*, 188 N. Y. Supp. 71, not officially reported.) Such a request, if proved, might well give rise to a judgment leviable upon the infant's property, if any, not in *custodia legis*, but it could not reach the latter except with the consent of the court, and, as Surrogate Foley clearly points out in *Matter of Vanderbilt* (*supra*), the payment of insurance premiums is not properly to be included within the subjects of " support " of the ward envisaged in section 194 of the Surrogate's Court Act.

Beyond all this, however, the court is unimpressed with the equities of respondent's position in this case. At the time of the application for this insurance, the ward was an orphan compelled to look for advice to his guardian, with whom he resided. He was only fifteen years of age and, therefore, obviously incapable of making a will. In the event of his death before attaining the requisite age for this purpose, his property would have been equally divisible between this brother-guardian and his sister. The effect in such an event of the purchase of this policy, payable solely to the brother, would, if sustained, alter the natural method of such devolution and effect a disinheritance of the sister in favor of the fiduciary.

What the laws of this State have inhibited by direct action its courts will not permit by circumvention. It is undoubtedly true that the cultivation of habits of thrift by the youth of the land is commendable to a degree, and such an object was manifestly the purpose of section 55 of the Insurance Law. This does not mean, however, that the enactment may be employed as a subterfuge for undermining the laws of distribution of the personal property of an infant or invest with competency to make a substantial testamentary disposition one whom the statutes of the State have, in effect, declared incapacitated to perform such an act.

Furthermore, the basic purpose of the inculcation of the habits of thrift while capable of encouragement by an obligation for small periodic premium payments by the insured, could not possibly be aided by a lump sum payment by another such as was made in the case at bar.

It is primary that one occupying a fiduciary relationship is under obligation to act with meticulous care in his dealings with those interested in the trust *res*, to the end that no undue personal advantage shall accrue to himself by reason of his position. As is said in *Belden* v. *Belden* (139 App. Div. 437, at p. 445): " In a court of equity the relation of the parties and their comparative

condition is of the utmost importance, and when a *prima facie* case is made of a fiduciary relation the burden is shifted to the fiduciary to satisfy the conscience of the court. Then the doctrine of *uberrima fides* becomes applicable."

In the case at bar the fiduciary character of the guardian lies at the root of the entire proceeding, so that even were all other considerations to be disregarded the respondent would be subject to an unsustained burden of demonstrating the propriety of this transaction which potentially diverted the entire patrimony of his ward to himself.

Finally, the purchase of this policy violates the principle noted with especial clarity in the *Vanderbilt* opinion that the property of the infant should not be impounded beyond his majority, at which time he is entitled to its absolute ownership.

It follows that the prayer of the petitioner must be granted; the letters of guardianship revoked, and the respondent be directed to file and proceed to settle his account within thirty days.

Proceed accordingly.