PASSAIC COUNTY CIRCUIT COURT.

BEATRICE MANDELL, PLAINTIFF, v. PASSAIC NATIONAL BANK AND TRUST COMPANY, A BANKING CORPORATION, DEFENDANT.

Decided July 8, 1940.

For the plaintiff, *Benjamin Rabinowitz* and *Abraham J. Cohen*.

For the defendant, *Feder & Rinzler*.

LEYDEN, C. C. J. This matter presents two motions to strike, one addressed to the amended answer upon the grounds that it is insufficient in law and sham in fact, and the other to the complaint upon the ground that it is sham.

Considering the complaint first, it is in three counts. The first alleges that on and prior to June 19th, 1934, the plaintiff, an infant under the age of twenty-one years, maintained a savings account in the defendant institution; that one

Samuel Mandell borrowed from the defendant the sum of $1,200 and as collateral security for the loan the plaintiff signed a note for said sum pledging her savings account as security; that on January 17th, 1936, there was a balance of $1,120.05 remaining unpaid on the note and the defendant bank, without authority and authorization from the plaintiff, deducted said sum from the account of the plaintiff and applied it in payment of the balance of the note. The plaintiff attained her majority of twenty-one years on December 29th, 1939, and immediately disaffirmed any agreement she might have had with the defendant bank and communicated said disaffirmance to the bank. The plaintiff demanded of the defendant the return of the $1,120.05 which was improperly withheld from her savings account, with interest from January 17th, 1936.

The second count additionally alleges that the defendant converted the withdrawal slip which the plaintiff signed for the sum of $1,120.05. The third count, after repeating the allegations of infancy and disaffirmance contained in the first count, states that on or about the 17th day of January, 1936, the defendant, without justification, deducted the sum of $1,120.05 from the account of the plaintiff and seeks its return.

The complaint inartistically sets forth a cause of action and its allegations are substantiated by an affidavit of the plaintiff. While there appears to be a discrepancy in the date and amount of the note, which may be cured by amendment there being only one note transaction between the parties, for present purposes the complaint is not sham and the motion of the defendant addressed to it will therefore be denied.

The moving papers disclose the facts to be as follows:

On December 24th, 1925, when the plaintiff was six years old, she went to the defendant institution, signed her name to a signature card (spelling the surname "Mandel") and opened savings account No. 80795 with a deposit of $1,272.50. Thereafter additional deposits were made by the plaintiff increasing the account to $3,276.96.

On June 26th, 1933, when the plaintiff was fourteen years of age, she again signed the same signature card, changing

the spelling of her surname to read "Mandell." On this occasion she was accompanied to the bank by her father, Samuel Mandell, and they conferred with Matthew H. Scheel, an assistant cashier of the defendant. Pursuant to this conversation the plaintiff, on June 26th, 1933, signed a check to the order of the bank in the sum of $1,500 drawn upon her savings and payable out of the funds represented by said account and delivered the check to the bank to facilitate the repayment of a loan should default be made. as and when due. At the same time she executed and delivered a collateral note agreement and the passbook No. 80795. The officer of the bank thereupon gave the plaintiff a bank check dated the same day payable to her order in the sum of $1,500, which check was subsequently endorsed "Beatrice Mandell," "S. Mandell." Payments were made on account of the loan, by whom it does not appear, reducing the $1,500 obligation to, with interest, $1,120.05. On January 17th, 1936, when the plaintiff was seventeen years of age, she went to the defendant bank accompanied by her mother and as a result of a conversation with the assistant cashier, she issued a check payable out of her savings account No. 80795 in the sum of $1,120.05 to the order of the defendant bank in full payment and satisfaction of the unpaid balance of the principal and interest due upon the said loan. She also signed a vault withdrawal slip calling for the production of the passbook, the collateral note agreement and her check for the $1,500 which the plaintiff had signed and left with the defendant bank at the time the loan was made. These instruments were thereupon returned to the plaintiff and the defendant thought the transaction was closed.

The plaintiff legally reached her majority on December 28th, 1939, the day before her twenty-first birthday, for the law takes no cognizance of the part of a day. A day begun is a day done. Thereafter the plaintiff, by a writing bearing date January 18th, 1940 (which writing the defendant admits receiving about January 31st, 1940) notified the defendant bank as follows:

"I, Beatrice Mandel, having arrived at age, do hereby choose to void the contract which you allege was entered into between us by virtue of a note executed by me under date of

June 19th, 1934, and by virtue of which you deducted from my account number 80795, the amount of $1,120.05, on date of January 17th, 1936.

I hereby demand that you restore to my account the aforesaid amount.

(Signed) BEATRICE MANDELL."

The date of June 19th, 1934, as contained in the notice is obviously an error, the correct date being June 26th, 1933, but it is deemed of no material importance because as already pointed out, there was only one note transaction between this plaintiff and the bank, and this both parties knew. Obviously it cannot be said that the defendant was misled thereby. The important fact was the note executed by the plaintiff during her infancy, regardless of the date.

There is not the slightest suspicion that the loan was made for necessaries.

The amended answer upon which attack is directed specifically denies the allegations contained in the various paragraphs of the first, second and third counts, with the exception it admits that account No. 80795 was recorded in the name of the plaintiff, and sets up seven separate defenses to all counts.

The material allegations of the complaint are supported by the affidavits of the plaintiff. The complaint alleges the loan was made to the father, S. Mandell, and the plaintiff pledged her account as collateral security for said loan. This is denied in the answer. The affidavits of defendant bank substantiate the denial and assert the loan was made to plaintiff and received by her. Thus a question of fact as to who obtained the proceeds of the loan is raised.

The first separate defense sets up the voluntary repayment of the loan by the plaintiff on January 17th, 1936, and the contemporaneous return to her of the collateral note, passbook and $1,500 check to order of the bank dated June 26th, 1933. Just what is intended by this defense is not entirely clear. If ratification is meant, it is no defense. The plaintiff on January 17th, 1936, being then seventeen years of age, was under the disability of infancy. While an infant may disaffirm a voidable contract during infancy, effectual ratifica-

tion of such a contract can only be made after majority. The same disability prevents ratification during minority. 1 *Williston on Contracts* 455, § 235. If restoration of consideration is meant, this defense may be good. Much seems to depend on whether the plaintiff in fact received the proceeds of the loan. If she borrowed the money and repaid it during infancy she has now no just cause of complaint. The parties are in *statu quo*. There is no subject-matter; nothing to litigate. It would be unjust to permit her to disavow the repayment of moneys received by her. On the other hand, if the loan was to the father to the knowledge of defendant bank and the proceeds went to him, the plaintiff receiving no benefit for her collateral agreement, the bank has been enriched at her expense in the sum of $1,120.05. This defense may be good. It will not be stricken.

The second separate defense asserts the plaintiff never disaffirmed her contracts or acts.

This defense is sham. Admittedly she disaffirmed by the notice in writing dated January 18th, 1940, which notice defendant admits receiving about January 31st, 1940, within thirty-four days after her twenty-first birthday. This defense is insufficient in law. The mere silence or inaction of a former infant after reaching full age does not amount to a ratification of contracts entered into during infancy. *Majaika* v. *Jamison,* 115 *N. J. L.* 358; 180 *Atl. Rep.* 402.

In *Montgomery* v. *Erie Railroad Co., 97 Fed. Rep.* (2d) 289, it was held that a lapse of two years and seven months after majority before steps were taken to disaffirm payment was insufficient to constitute ratification.

The third separate defense alleges the plaintiff's failure to disaffirm during infancy or within a reasonable time thereafter. She was under no obligation so to do. *Majaika* v. *Jamison, supra.* The defense is insufficient in law.

The fourth defense asserts the agreements and contracts of plaintiff are executed.

Whether executory or executed, the contract is not binding on the minor until and unless the infant ratifies the agreement after reaching majority. The defense is bad.

The fifth defense sets up ratification by plaintiff after reaching her majority by maintaining a savings account and

continuing to do business with defendant by making further deposits and by applying for employment with the defendant institution.

The defense is sham. The affidavits disclose she still maintains the account. The deposits and application for employment were all made prior to December 28th, 1939. Assuming such conduct would amount to a ratification, the acts set forth occurred during her infancy.

The sixth defense alleges the moneys on deposit in the savings account belonged to and were the property of Samuel Mandell and not the plaintiff, and that she was his agent and servant in the matter of the loan. There is nothing in the moving papers to contradict or contravert the plaintiff's affidavit that she was the sole owner of the fund. The defense is sham.

The seventh defense alleges the plaintiff signed, executed and delivered her check to the order of defendant for $1,120.05 and that she executed a receipt and acquittance for such withdrawal out of her savings account. Reliance for this defense is placed upon the statute, *N. J. S. A.* 17:9-1 and 2. This statute relates to deposits by infants and provides an infant may deposit and withdraw funds as if an adult person and in connection therewith as between the infant and the bank be subject to all the obligations, equities and defenses to which an adult would be subject in similar transactions. The receipt or acquittance of the minor is made a valid release and discharge for the deposit to the bank.

The intent of this act is obvious. It is to place an infant in the same category with an adult in the matter of depositing and withdrawing funds to the credit of the infant with the bank. It has no application here where the suit is to recover payment of an extraneous obligation now sought to be avoided on the ground of infancy.

The motion to strike the amended answer is general. It is equivalent to a general demurrer. Part of the answer is good and raises questions of fact which must be determined by a jury. The motion is therefore denied. *Hudson* v. *Inhabitants of Winslow,* 35 *N. J. L.* 437; *Rogers* v. *Cox,* 66 *Id.* 432; 50 *Atl. Rep.* 143.