208 N.J. Super. 618 (1986)
506 A.2d 792
IN THE MATTER OF THE GUARDIANSHIP OF A.D.L., A MINOR.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1986.
Decided March 17, 1986.
*620 Before Judges FURMAN, PETRELLA and COHEN.
Joseph F. Greene, Jr. argued the cause for appellant Ellen Loughney, General Guardian of the estate of A.D.L. (Brown, Connery, Kulp, Wille, Purnell & Greene, attorneys; Joseph F. Greene, Jr., on the brief).
*621 Joseph Asbell, respondent Guardian Ad Litem for A.D.L., a Minor, argued the cause pro se.
The opinion of the court was delivered by COHEN, J.A.D.
The question before us is whether a court may authorize a guardian to invest a minor's funds in an annuity contract which contemplates deferred periodic payments extending beyond minority. We hold that there is no bar to such authorization, but that it should not be granted in every case.
ADL was six years old at the time of these proceedings. His father's death had been the subject of an earlier action for damages on behalf of the estate, the widow and ADL. A settlement, approved by a United States District Court in California, apportioned a gross $1 million to the widow, ADL's mother, and a gross $250,000 to ADL. After a counsel fee was allowed, ADL's net $166,667 was to be paid to his mother as guardian.
ADL's mother applied to the Surrogate of Camden County for letters of general guardianship. The Law Division ordered the Surrogate to issue letters of guardianship under N.J.S.A. 3B:15-16; ADL's money was paid jointly to his mother, as guardian, and to the Surrogate for investment at interest. The estate was thus saved the expense of a surety bond.
The guardian then applied to the Law Division for permission to use the funds to purchase an annuity contract providing deferred payments to ADL. She did not seek approval of a particular annuity contract, but asked for threshold review of the legality of the concept. She submitted certifications setting forth the perceived limitations and disadvantages of surrogates' *622 investments, and the possibilities for flexibility and growth offered by a deferred annuity.[1]
On the one hand, the guardian pointed out the modest growth in ADL's funds expectable from investment at a taxable 10% or 11% interest rate. In contrast, she offered the example of a deferred annuity proposed by a life insurance company. Under the proposal, she would make one premium payment of $165,000. The company would pay ADL nothing until age seventeen, when it would make the first of four annual payments of $35,000. Then, it would make twenty annual payments, starting at $108,000 and increasing at a compounded annual rate of 5%. The twentieth payment would be over $270,000, and the total of all twenty-four payments would be some $3.7 million. The income would not be taxable to ADL until he actually received it. If he died before receiving all payments, the rest would be paid to his mother or the designee he selected after reaching majority.
In their certifications, ADL's mother and her new husband, who had adopted ADL, expressed a willing recognition of their duty to support him during minority. They mentioned ADL's $229 monthly Social Security survivor's benefit, which they banked for him and did not use for his support. Unmentioned but implicit in the certifications was the availability of the substantial sum from the mother's share of the California settlement.
The Law Division held that it had no authority to permit the purchase of an annuity with payments extending beyond age eighteen. We reverse and hold that a court has authority under N.J.S.A. 3B:12-49 to permit such a purchase.
It was traditionally held that a minor was entitled to distribution of his estate in cash upon majority. See Villard v. Villard, 219 N.Y. 482, 500, 114 N.E. 789, 793 (1916); Ex Parte *623 Phillips, 19 Ves. Jr. 118, 34 Eng.Rep. 463 (1812); Ware v. Polhill, 11 Ves. Jr. 257, 32 Eng.Rep. 1087 (1805); 2 Kent, Commentaries on American Law (12 ed. 1873).[2] Thus, the guardian of a minor's estate was not authorized to "impound" the funds, so as to deprive the minor of absolute enjoyment of the estate upon reaching majority. In re Vanderbilt's Estate, 129 Misc. 605, 223 N.Y.S. 314 (Surr.), aff'd 222 N.Y.S. 916 (A.D. 1927). The rule was held to bar purchase by the guardian of an annuity contract involving payments after majority because it would prevent distribution on majority in cash. Rooney v. Weiner, 147 Misc. 48, 263 N.Y.S. 222 (Surr. 1933). It was also held to bar purchase of participations in mortgages maturing after majority for the same reason. In re Blake's Will, 146 Misc. 780, 263 N.Y.S. 310 (Surr. 1933). In one case, however, a Pennsylvania Orphan's Court permitted a testamentary guardian to purchase an endowment insurance policy on his ward's life, on the thesis that it seemed a prudent investment and was favored by the guardian, in whom the testator had placed confidence. Price's Estate, 19 Pa. D. & C. 266 (Orphan's Ct. 1933).
Today, the role of a guardian for a minor's estate is largely statutory. See N.J.S.A. 3B:12-48. The investments permitted to the guardian are governed by the Prudent Investment Law, N.J.S.A. 3B:20-12 through 17, which allows a guardian to "invest in any investments whatsoever," N.J.S.A. 3B:20-14, subject only[3] to the guardian's duty to
exercise care and judgment under the circumstances then prevailing, which persons of ordinary prudence and reasonable discretion exercise in the management *624 of and dealing with the property and affairs of another, considering the probable income as well as the probable safety of capital. [N.J.S.A. 3B:20-13].
Nothing in the Prudent Investment Law either limits minors' guardians to investments maturing at majority or specifically frees them from any such common-law restriction.
A minor's guardian's distribution upon the ward's majority need no longer be made in cash. N.J.S.A. 3B:12-54 requires the guardian to "pay over and distribute all funds and properties ...." [emphasis supplied]. Thus, distribution of estate assets upon majority may be made in kind. Cf. N.J.S.A. 3B:23-2.
N.J.S.A. 3B:12-49 defines the court's power over the estate of a minor or incompetent. It is worth examining in its entirety:
The court has, for the benefit of the ward, his dependents and members of his household, all the powers over his estate and affairs which he could exercise, if present and not under a disability, except the power to make a will, and may confer those powers upon a guardian of his estate. These powers include, but are not limited to power to convey or release the ward's present and contingent and expectant interests in real and personal property, including dower and courtesy and any right of survivorship incident to joint tenancy or tenancy by the entirety, to exercise or release his powers as trustee, personal representative, custodian for minors, guardian, or donee of a power of appointment, to enter into contracts, to create revocable or irrevocable trusts of property of the estate which may extend beyond his disability or life, to exercise his options to purchase securities or other property, to exercise his rights to elect options and change beneficiaries under insurance annuity policies and to surrender the policies for their cash value, to exercise his right to an elective share in the estate of his deceased spouse to the extent permitted by law and to renounce any interest by testate or intestate succession or by inter vivos transfer.
The quoted provision gives the court, and permits it to confer on the guardian, all of the powers which a minor could exercise over the estate if not under the disability of minority, except the power to make a will. Among the powers specifically mentioned are the powers

*625 * * * to create revocable or irrevocable trusts ... which may extend beyond his disability or life, * * * to exercise his rights to elect options ... under insurance annuity contracts....[4]
A court or guardian exercising these powers pursuant to court order could effectively "impound" the estate so as to deprive the minor of absolute enjoyment of the estate upon reaching majority.
The quoted provision applies to estates of minors and of incompetents. This is made clear by the reference to them both in the preceding section, N.J.S.A. 3B:12-48, which, when first enacted, was part of the same provision. See N.J.S.A. 3A:6-16.19 (repealed). The development of the statutory language is instructive. Section 5-408 of the Uniform Probate Code,[5] from which the language was taken, like N.J.S.A. 3B:12-49, confers powers on the court to deal with guardians of minors' and incompetents'[6] estates. Unlike N.J.S.A. 3B:12-49, however, the Code section treats them separately. It mentions minors' estates only briefly and generally:
... the court has all those powers over the estate and affairs of the minor which are or might be necessary for the best interests of the minor, his family and members of his household. [Section 5-408(2)].
The next Code subsection contains essentially the same language which N.J.S.A. 3B:12-49 applies to minors' and incompetents' estates, with a striking exception: it plainly applies only to the estates of incompetents.[7]
The Code's list of included powers, applied by New Jersey to both minors' and incompetents' estates, contains *626 items unlikely to apply to minors. It includes powers to convey or release marital property rights, including tenancies by the entireties, powers of the ward as trustee, personal representative or guardian for a minor, and powers to exercise any right to an elective share in the estate of the ward's spouse. We cannot, however, conclude that the Legislature acted without design in combining the two separate subsections of Code Section 5-408. We must assume that it purposely gave the court, and, through it, the guardian, "all the powers over [the] estate and affairs which [the minor] could exercise, if ... not [a minor], except the power to make a will." N.J.S.A. 3B:12-49. A person not under a disability may enter into a contract for annuity payments of any duration and, therefore, a guardian of a minor's estate may lawfully be authorized to do so on the minor's behalf.
The only question before us is whether the law bars authorizing purchase of an annuity whose payments extend into majority, and we have answered that question in the negative. Our answer should not, however, be taken to encourage approval of every proposed purchase. Although impoundment of a minor's estate is not always barred, a guardian's function does not routinely include investing so as to restrict the minor's enjoyment of the estate after majority. The age of majority is fixed by the Legislature. It is not to be postponed by courts in individual cases.
Authorization should be granted only on specific application and only if the court is satisfied either that the provisions of the annuity contract will not impound the minor's estate (as they would not if the contract includes an option permitting the annuitant to opt to terminate the contract for its commuted value upon reaching majority), or if the court is satisfied that the circumstances justify depriving the ward of absolute and unrestricted enjoyment of the estate upon majority. We do not now say what those circumstances would be. Clearly, however, the court should consider a broad range of *627 elements, such as the financial and psychological consequences of putting all or a substantial part of the minor's estate out of reach for a long period of time, the amount of money involved, the availability of other resources for current maintenance and support, the stability of the company offering the annuity, the adequacy of hedges against inflation contained in the proposed contract, the comparative favorability of the contract and the efforts made by the guardian to shop for alternatives, any special needs or vulnerabilities of the minor, the income tax consequences, and the availability of a contract provision granting a commutation option upon the minor's reaching majority.[8]
A commutation option would dissipate the impoundment objection to long-term annuity contracts by permitting the minor to "cash in" the contract for its current value upon reaching majority. There is no information before us to show whether such an option is generally available, or if its inclusion would depress the level of benefits. If it is available without significant effect on benefits, a court should not, without compelling reasons, authorize a guardian to enter into a contract that does not offer the option. The fear that the generality of eighteen-year-olds might irresponsibly handle suddenly available funds would be an insufficient reason. Individual needs and weaknesses may be something else, as may be the involvement of sums of money overwhelmingly large for youthful management.
*628 The only general, as opposed to individual, circumstance that presently occurs to us as a possible justification for preferring an annuity contract without a commutation option is the use of an annuity contract in a structured settlement. The proceeds of an annuity contract employed to fund a structured settlement are not taxable as income if the transaction meets certain requirements contained in the Internal Revenue Code. One of them is that the proceeds not be anticipatible by the recipient. See I.R.C. § 104(a)(2); § 130 (1985). If the inclusion of an option to cash in the annuity contract would violate that requirement, the court should weigh the cost in added taxes against the desirability of avoiding impoundment, and use its best judgment in the interest of the individual minor.
Reversed. If the guardian should apply for authorization to purchase a particular annuity contract, the application should be entertained by the Law Division in a manner consistent herewith.
NOTES
[1] She actually proposed to enter an annuity contract providing for presently agreed periodic payments to commence at a presently agreed future date. For convenience, we will use the description "deferred annuity."
[2] It appears the rule developed in England not only out of concern for liquid distribution, but also out of concern that conversion of the minor's estate from personalty to realty should not affect descent of the estate if the minor should die before majority.
[3] The guardian's discretion is also subject to any limitations contained in a will, trust instrument or court order from which the guardian's authority is derived. N.J.S.A. 3B:20-15.
[4] The Code language is "under insurance and annuity contracts." (emphasis supplied). The reason for omission of "and" in New Jersey's Statute is not clear.
[5] Now Section 5-407 by reason of later revision of the Code. The few language changes are immaterial.
[6] Mental incompetency is more broadly defined in N.J.S.A. 3B:1-2 than formerly. The Code does not refer to incompetents. Rather, it uses the concepts of "protective proceedings," "disability," and "incapacitated person." See Current Code Sections 5-103(4), (7) and (18); 5-401.
[7] See footnote 2.
[8] This case does not involve a structured settlement, one in which a defendant agrees to make a stream of payments over time and then assigns the obligation to an insurance company which agrees for a premium to make the payments. We have no occasion to rule on the applicability of our decision to the approval of structured settlements involving minors, but we cannot help noticing the parallels. We observe only that infants' settlements are subject to court approval under R. 4:44, and that proceedings to gain court approval could conveniently be employed also to explore the matter of the annuity. But see N.J.S.A. 3B:12-36. Where the annuity is proposed for an infant in the settlement of a death claim, where no R. 4:44 proceedings will be held, a more difficult procedural problem exists. Proceedings under N.J.S.A. 2A:31-4 may not suit the purpose. The problem is not, however, presented by this case.