66 A.3d 205

IN THE MATTER OF THE ESTATE OF
JACK D. THOMAS, DECEASED.

Superior Court of New Jersey
Appellate Division

Submitted March 5, 1013—Decided May 22, 2013.

24

Before Judges FISHER, ALVAREZ and ST. JOHN.

*Law Offices of Linda Ballan, L.L.C.,* attorneys for appellant Dorothy Davis (*Linda Ballan,* of counsel and on the brief; *Paul DePetris,* on the brief).

*Hanlon Niemann, P.C.,* attorneys for respondents Rhonda Duty, Marcella Williams, Janelle Simms (a/k/a Lynn Foxworth),

Sidney Riley, Gregory Thomas, Delma Thompson, Willard Arlo Riley, Erwin Darnell Coleman, Lois Scroggins, Denise Coleman, Estate of Patsy Woods (deceased), Richard Riley, and Tomeeka Coleman (*Lauren D. Bercik,* on the joint brief).

*Lois D. Sutton, L.L.C.,* attorney for respondent James O. Thomas, Administrator of the Estate (*Lois D. Sutton,* on the joint brief).

*Sellar Richardson, P.C.,* attorneys for respondent Western Surety Company, join in the brief of respondents.

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we review an order that summarily dismissed plaintiff Dorothy Davis's complaint, which sought a declaratory judgment that she is decedent's only child and sole heir, and which also sought vacation of the grant of letters of administration to defendant James Thomas, decedent's sole surviving brother. In addition, we consider the judge's denial of plaintiff's motion for disinterment of decedent's remains that was sought by plaintiff for the purpose of establishing her claim that decedent was her father.

The Chancery judge determined that plaintiff's complaint was time-barred because it was filed four months beyond the six-month time-bar established by *Rule* 4:85-1. We reverse because *Rule* 4:85-1 has no application to an action establishing the proper line of intestate succession. And, although *Rule* 4:85-1 is germane to plaintiff's action to vacate the grant of letters of administration, the six-month time-bar is not intractable and may be extended, through application of *Rule* 4:50-1(f), in exceptional circumstances, which are present here. We also vacate the order denying disinterment but remand for further consideration of that issue following an evidentiary hearing.

The record establishes that Jack D. Thomas died intestate on January 24, 2010. James Thomas, decedent's only surviving

brother, applied nearly a year later to be appointed the intestate estate's administrator. An order granting him letters of administration was entered on January 19, 2011. Because James claimed in his application that decedent had no children, plaintiff was neither notified of James's application nor served with the order granting letters of administration.

On December 14, 2011, plaintiff filed a verified complaint. On the return date of an order to show cause, the Chancery judge chose not to rule on the merits but instead directed a brief period of discovery and invited plaintiff's motion for disinterment of decedent's remains. Discovery was conducted and the motion for disinterment was filed, as were cross-motions for summary judgment seeking dismissal on the ground that plaintiff's complaint was untimely. On the return date, the Chancery judge granted the cross-motions for dismissal and, although not necessary to her disposition of the action, the judge, recognizing the likelihood of an appeal, addressed the merits of the disinterment motion and denied that motion as well.

Davis appeals, seeking our review of the judge's rulings on both the timeliness of the action and disinterment.

I

In dismissing the action, the judge concluded the timeliness of plaintiff's complaint was governed by *Rule* 4:85-1. That rule, however, by its very terms, applies only to actions to set aside orders granting probate or letters of appointment, such as letters of administration, as were issued here.[1] The timeliness of plain-

---

[1] In relevant part, *Rule* 4:85-1 states: "If a will has been probated by the Surrogate's Court or letters testamentary or of administration, guardianship or trusteeship have been issued, any person aggrieved by that action may, upon the filing of a complaint setting forth the basis for the relief sought, obtain an order requiring the personal representative, guardian or trustee to show cause why the probate should not be set aside or modified or the grant of letters of appointment vacated, provided, however, the complaint is filed within four months after probate or of the grant of letters of appointment, as the case may be, or if the

tiff's first count, which seeks a declaratory judgment establishing intestate succession and plaintiff, who was born in 1943, as decedent's only child, is judged by a different standard than the other counts, which collectively seek to vacate the grant of letters of administration, the termination of James's appointment as administrator, an accounting and other related relief. We separately analyze the timeliness of the first count and the timeliness of the remaining counts.

### A

By way of the first count of her complaint, plaintiff sought a judgment declaring that she is the decedent's sole heir based on her allegation that she is decedent's only child. As we have mentioned, the timeliness of this action is not governed by *Rule* 4:85–1, which, by its terms, is limited to actions challenging when "a will has been probated by the Surrogate's Court or letters testamentary or of administration, guardianship or trusteeship have been issued." *See Marte v. Oliveras,* 378 *N.J.Super.* 261, 267, 875 *A.*2d 969 (App.Div.), *certif. denied,* 185 *N.J.* 295, 884 *A.*2d 1265 (2005).

Instead, *N.J.S.A.* 3B:5–10 governs plaintiff's first count:

> If, for the purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from an individual, ... an individual is the child of the individual's parents regardless of the marital state of the individual's parents, and the parent and child relationship may be established as provided [in *N.J.S.A.* 9:17–38 to–59]. The parent and child relationship may be established for purposes of this section regardless of the time limitations set forth in [*N.J.S.A.* 9:17–45(b)].

Although the reference to "child" in this statute might on first blush suggest its inapplicability to a seventy-year-old plaintiff, in fact the word in this context is not defined by age but by relationship to the decedent. *N.J.S.A.* 3B:1–1.[2] The statute ap-

---

aggrieved person resided outside this State at the time of the grant of probate or grant of letters, within six months thereafter."

[2] " 'Child' means any individual, including a natural or adopted child, entitled to take by intestate succession from the parent whose relationship is involved

plies whenever an individual seeks to prove for purposes of establishing succession that he or she is the child of a person who dies intestate.

The statute expressly directs application of the Parentage Act, which contains a limitations period that bars such an action "brought ... more than 5 years after the child attains the age of majority." *N.J.S.A.* 9:17–45(b). *N.J.S.A.* 3B:5–10, however, clarifies that the time limitation in *N.J.S.A.* 9:17–45(b) does not apply to an action to establish intestate succession. Instead, the only time-bar suggested by these statutes is found in *N.J.S.A.* 9:17–45(f), which states that "[t]his section does not extend the time within which a right of inheritance or a right of succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estate or to the determination of heirship, or otherwise, or limit any time period for the determination of any claims arising under the laws governing probate, including the construction of wills and trust instruments." *N.J.S.A.* 9:17–45(f). The types of causes of action referred to in *N.J.S.A.* 9:17–45(f) are either governed by the time frame established in *N.J.S.A.* 3B:23–19(c) [3] or, when that statute is not applicable, the doctrine of laches, *see In re Estate of Mosery,* 349 *N.J.Super.* 515, 522–25, 793 *A.*2d 894 (App.Div.), *certif. denied,* 174 *N.J.* 191, 803 *A.*2d 1163 (2002); *In re Ewert,* 65 *N.J.Super.* 100, 103, 167 *A.*2d 175 (App.Div.1961).

The time limitation contained in the Probate Code applies to actions "for the distribution of the property of which a decedent

---

.and excludes any individual who is only a stepchild, a resource family child, a grandchild or any more remote descendant."

[3] This statute was amended in the wake of the Supreme Court's decision in *Wingate v. Estate of Ryan,* 149 *N.J.* 227, 242–43, 693 *A.*2d 457 (1997), where the Court determined that amendments to *N.J.S.A.* 3B:5–10 then in effect "did not change the Probate Code's statute of limitations" in *N.J.S.A.* 3B:23–19. The current versions of these statutes more concretely define the timeliness of such actions than the reasonableness standard the Court considered in *Wingate, supra,* 149 *N.J.* at 243, 693 *A.*2d 457.

dies intestate that no heirs to the property can be found or in addition to persons known to have an interests in the estate, there may be others whose names or addresses are unknown who may be entitled to participate in the distribution." *N.J.S.A.* 3B:23–19(a). The Probate Code establishes that in those circumstances, the court may order part of the estate to be set aside for "two years beginning at the date of death unless good cause is shown to set another period." *N.J.S.A.* 3B:23–19(c). Plaintiff's declaratory judgment action is not a claim encompassed by this description. Accordingly, we turn to the doctrine of laches to determine whether plaintiff timely filed her claim regarding intestate succession.

Laches will bar the prosecution of an equitable claim if the suitor has inexplicably, inexcusably and unreasonably delayed pursuing a claim to the prejudice of another party. *Knorr v. Smeal,* 178 *N.J.* 169, 180–81, 836 *A.*2d 794 (2003); *see also Stroebel v. Jefferson Trucking & Rigging Co.,* 125 *N.J.L.* 484, 487, 15 *A.*2d 805 (E. & A.1940) (defining laches as involving a delay that "must be for a length of time which, unexplained and unexcused, is altogether unreasonable under the circumstances, and has been prejudicial to the party asserting it or renders it very doubtful that the truth can be ascertained and justice administered"). Plaintiff's action was commenced less than two years after decedent's death, a delay that may give the appearance of being unduly extended only when compared to the abbreviated time-bar contained in *Rule* 4:85–1. But we often look for an analogous statute of limitations to determine whether there has been an inexcusable delay, *Lavin v. Hackensack, Bd. of Educ.,* 90 *N.J.* 145, 152 n. 1, 447 *A.*2d 516 (1982); *Colton v. Depew,* 60 *N.J. Eq.* 454, 458–60, 46 *A.* 728 (E. & A.1900), and note here that plaintiff's action was commenced within the two-year time-bar contained in *N.J.S.A.* 3B:23–19(c).[4] We thus reject the contention that plaintiff unduly delayed in seeking relief.

---

[4] We do not view *Rule* 4:85–1 as presenting an "analogous" time-bar. That rule appropriately establishes a very short period of time for a challenge to

Moreover, no prejudice resulted from plaintiff's failure to move more expeditiously to establish her parentage claim. Prejudice is a critical element in this analysis. The record does not suggest the administration of the estate is very far along or that a disposition of plaintiff's claim regarding intestate succession will require the undoing of anything already done; far from it.[5] Indeed, James also failed to move with any great alacrity since he did not seek letters of administration until nearly one year after decedent's death. We conclude that the dismissal of plaintiff's claim for a declaratory judgment regarding intestate succession was erroneous.

## B

Plaintiff's claim for the rescinding of the letters of administration, however, is subject to the time restrictions on which the parties and trial judge focused. An application for dismissal of such an action based on timeliness requires consideration of both the specific time-bar contained in *Rule* 4:85–1 and the equitable considerations referred to in *Rule* 4:50–1. That is, *Rule* 4:85–1 requires that if letters of administration have been issued, an out-of-state aggrieved party may file a complaint seeking relief from that determination provided the complaint is filed within six months of the grant of letters. But *Rule* 4:85–1 also provides that if relief is sought pursuant to subsections (d), (e) or (f) of *Rule* 4:50–1 or *Rule* 4:50–3, the complaint must be filed "within a reasonable time under the circumstances."

Plaintiff's complaint sought the disturbance of an order or judgment. The historical roots for such an application can be

---

probate or letters for, otherwise, those appointed would remain uncertain as to the propriety of their actions if an individual could seek vacation of the appointment at a much later date. Those same concerns are not applicable to an action establishing intestate succession.

[5] The Chancery judge stayed the further administration of the estate pending disposition of this appeal.

found in the equitable writ of *audita querela,* a proceeding "instinct with equitable considerations." *Prof'l Stone, Stucco & Siding Applicators, Inc. v. Carter,* 409 *N.J.Super.* 64, 68, 975 *A.*2d 1039 (App.Div.2009). Accounting for those equitable underpinnings and the "well-established mandate that we liberally view and indulge" applications for relief in such circumstances, we reject the Chancery judge's determination that plaintiff did not move for relief within a reasonable time. *Ibid.*

The question is whether the "interests at stake" and "our court rules' overarching goal of promoting the fair and efficient administration of justice" would be undermined by the continued maintenance of plaintiff's action regarding James's appointment even though the complaint was filed four months beyond the six-month time-bar contained in *Rule* 4:85–1. *Ragusa v. Lau,* 119 *N.J.* 276, 283–84, 575 *A.*2d 8 (1990); *Prof'l Stone, Stucco & Siding Applicators, Inc., supra,* 409 *N.J.Super.* at 68, 975 *A.*2d 1039. Disposition of the competing equities necessarily turns on the factual circumstances, which, in this case, should have been viewed in the light most favorable to plaintiff, the opponent of the cross-motions for summary judgment. *See Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

■ Consequently, in considering whether there were exceptional circumstances warranting the continued maintenance of the action despite the four-month delay beyond the six-month time-bar, the Chancery judge was required to assume that plaintiff did *not receive notice* of the issuance of letters of administration. In addition, the judge should have assumed for these purposes the truth of plaintiff's contention that she was decedent's daughter. And the judge should have further assumed that defendants would not be prejudiced by the continued maintenance of this action.

Instead, the Chancery judge mistakenly found plaintiff's proofs to be inadequate and self-serving. The judge was not entitled to weigh the factual allegations at the summary judgment stage. Instead, the *Brill* standard required that the judge assume the truth of plaintiff's claim that her mother, Gladys Dent, and

decedent were neighbors in Haynesville, Louisiana, that plaintiff's mother and decedent had a sexual relationship when they were sixteen and seventeen years old, respectively, and that plaintiff, who was born on May 2, 1943, was the product of this relationship.

Plaintiff offers other evidential material that supports her claim that decedent was her father, including sworn statements that other members of decedent's family accepted or acknowledged her to be decedent's daughter from the time of her birth. Throughout her childhood, plaintiff visited the home of decedent's parents, whom she viewed as her grandparents, where decedent was occasionally present as well as other members of the Thomas family, including those who stand to inherit if plaintiff's claim is barred. From the time she entered school until she married, plaintiff carried decedent's last name.[6]

Plaintiff also provided evidence of her daughter Alicia's relationship with decedent and other members of the Thomas family as proof of paternity. Alicia carried decedent's last name, Thomas, and has maintained familial relationships with several of those whom plaintiff refers to as her paternal cousins. The Thomas family introduced Alicia to decedent as her grandfather while she visited others in Louisiana in the 1970's. According to plaintiff, decedent took Alicia shopping, bought her clothes, gave her monetary gifts and later sent her a letter and a bracelet. Although it has been argued that this additional information is purely circumstantial, and recognizing that proving a negative is difficult, it is noteworthy that defendants have not provided certifications or other evidential material disputing plaintiff's assertions.

---

[6] A Louisiana school census record from the Claiborne Parish School that plaintiff attended memorializes that plaintiff's father's name was "Dimpsey Thomas," which plaintiff claims is a misspelling of decedent's middle name, Dempsey, and an omission of his first name. When plaintiff and her mother moved to Texas, school records listed decedent as her father. According to plaintiff, James, who disputes plaintiff's claim of paternity, visited plaintiff in Texas in his role as her uncle.

In determining whether exceptional circumstances warranted the late filing of plaintiff's complaint, the judge relied on the undisputed fact that, as a result of speaking with family members, plaintiff knew that decedent had passed away immediately after his death. But plaintiff also certified she had no knowledge that decedent died without a Will and was uncertain about the circumstances regarding his estate due, in large part, to the alleged unwillingness of James and other family members to answer her inquiries.

Ultimately, an action to set aside letters of administration filed beyond the time-frame contained in *Rule* 4:85–1 is informed by the principles recognized in the application of *Rule* 4:50–1(f). That rule permits relief from a judgment in the "interests of justice," *Siwiec v. Fin. Res., Inc.,* 375 *N.J.Super.* 212, 219, 867 *A.*2d 485 (App.Div.2005), the "boundaries [of which] are as expansive as the need to achieve equity and justice," *Court Inv. Co. v. Perillo,* 48 *N.J.* 334, 341, 225 *A.*2d 352, (1966). Consideration of this question is a truly fact-sensitive matter. *Baumann v. Marinaro,* 95 *N.J.* 380, 395, 471 *A.*2d 395 (1984). Where either party raises a "sufficient question as to the merits of plaintiffs' case, courts may grant the application even where defendant's proof of excusable neglect is weak." *Siwiec, supra,* 375 *N.J.Super.* at 220, 867 *A.*2d 485. In such instances, however, the court must be convinced that the movant's neglect was "neither willful nor calculated." *Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n,* 132 *N.J.* 330, 336, 625 *A.*2d 484 (1993).

■ In explaining why time was allowed to pass before she filed her complaint, plaintiff asserts that although she knew decedent died, she did not know and did not receive notice that decedent died intestate. She also claims that she did not know where to obtain information regarding the estate and that James did not return her telephone calls. There is no evidence to suggest plaintiff willfully or deliberately delayed in commencing the action. Indeed, there was no motive for her to wait, since delay would provide her no benefit and only had the potential to cause the loss

of her claim.[7] Moreover, defendants have not shown they have been or will be prejudiced by the continued maintenance of this action other than the fact that they will have to defend against plaintiff's claim on its merits, the type of prejudice that carries no weight in these circumstances.

We lastly note, in this regard, that to make the effect of plaintiff's failure to meet the six-month time-bar contained in *Rule* 4:85–1 appear worse than it is, defendants refer to the fact that plaintiff's complaint was filed twenty-three months after decedent's death. That fact is misleading, since James delayed for nearly one year before seeking letters of administration. Plaintiff's delay in seeking to set aside those letters is not determined by reference to the date of death but by reference to the date the letters were issued. Indeed, James's delay in seeking letters of administration demonstrates the lack of prejudice for him or the other heirs caused by plaintiff's delay.

Although the timeliness of an action filed beyond the specific time frame contained in *Rule* 4:85–1 might ordinarily necessitate an evidentiary hearing, the record contains no evidence to suggest defendants would be prejudiced by the action's continuation, particularly in light of our holding that the first count must be permitted to go forward. Indeed, administration of an intestate estate is normally placed in the hands of the ultimate beneficiary, *see N.J.S.A.* 3B:10–2; *In re Estate of Watson,* 35 *N.J.* 402, 408, 173 *A.*2d 266 (1961), and if plaintiff is able to demonstrate that she

---

[7] We emphasize this is not a case where the putative heir was served with notice of the issuance of letters of administration and failed to file within the time provided by *Rule* 4:85–1 or a reasonable time thereafter. Having failed to serve plaintiff with the prior pleadings or order plaintiff now seeks to set aside, James and the other putative heirs cannot complain that plaintiff filed her complaint a mere four months more than the six-month time period permitted by *Rule* 4:85–1. *See City of E. Orange v. Kynor,* 383 *N.J.Super.* 639, 646, 893 *A.*2d 46 (App.Div.) (finding the failure to serve an accurate foreclosure notice was sufficient to warrant relief under *Rule* 4:50–1(f)), *certif. denied,* 188 *N.J.* 352, 907 *A.*2d 1012 (2006).

is decedent's only child, it would likely follow that she be given that office.

## C

To summarize, *Rule* 4:85–1 has no application to plaintiff's intestate-succession claim; the timeliness of that claim is determined by resort to the doctrine of laches, which does not permit dismissal here. And, although plaintiff's claim that the grant of letters of administration should be vacated is governed by *Rule* 4:85–1, expandable by resort to *Rule* 4:50–1, we conclude that the interests of justice are not offended by the continued maintenance of that aspect of the complaint.

We reverse the summary judgment that dismissed plaintiff's complaint on timeliness grounds.

## II

Now that we have determined plaintiff's complaint is not time-barred, we must consider the order denying disinterment.[8]

 "[O]nce a body is buried it is in the custody of the law, and removal or other disturbance of it is within the jurisdiction of our courts with equitable powers." *Petition of Sheffield Farms Co.,* 22 *N.J.* 548, 556, 126 *A.*2d 886 (1956); *see also Marino v. Marino,* 200 *N.J.* 315, 320, 981 *A.*2d 855 (2009). The law's interest in a decedent's remains is limited, as disinterment for the furtherance of private rights is not favored. *Sheffield Farms, supra,* 22 *N.J.* at 556, 126 *A.*2d 886; *Perth Amboy Gas Light Co. v. Kilek,* 102 *N.J. Eq.* 588, 590, 141 *A.* 745 (E. & A.1928); *Sherman v. Sherman,* 330 *N.J.Super.* 638, 646, 750 *A.*2d 229 (Ch.Div.1999); *Camilli v. Immaculate Conception Cemetery,* 244 *N.J.Super.* 709,

---

8 Although decedent was not buried but instead entombed in a mausoleum, no one has argued that the law should view these circumstances differently. For that reason, we use the term "disinterment" rather than the term used by the parties, "disentombment."

713, 583 *A*.2d 417 (Ch.Div.1990). Stated another way, a family's property interest in a deceased family member's body is restricted and ceases upon burial. *Lascurain v. City of Newark*, 349 *N.J.Super.* 251, 270, 793 *A*.2d 731 (App.Div.2002). As a result, when private interests generate the request, disturbance of a decedent's remains should not occur "unless it be clearly shown that good cause and urgent necessity for such action exist." *Sheffield Farms, supra*, 22 *N.J.* at 556, 126 *A*.2d 886. In short, courts will only "reach into the grave in search of 'the facts'" in the rare cases where it is "clearly necessary and there is reasonable probability that such a violation of the sepulchre will establish what is sought." *Ibid.*

The trial judge denied relief by finding that plaintiff failed to present "clear and convincing evidence that disinterment of the [decedent's] remains will with reasonable probability lead to the discovery of information sought" and that plaintiff's claim of parentage was based on "self[-]serving facts and information from herself and her mother." The first aspect of the judge's holding was rendered despite plaintiff's presentation of a certification of a triple-board certified pathologist, who is a designated medical examiner in other vicinages in New Jersey, that in his experience "DNA testing can be performed successfully on embalmed bodies" through examination of "a tissue sample from the femur bone." Indeed, defendants did not dispute this assertion and argue before us only—and mistakenly—that the pathologist's certification contained a net opinion. The ability to determine parentage through DNA testing is well-established and the only competent evidence before the judge at the time supported the potential determination of plaintiff's claim through disinterment and testing.[9]

---

[9] This differs from past cases in which courts have found that the disturbance of a decedent's remains would not establish what is sought. For example, in *Sheffield Farms*, the Court found the evidence did not provide a reasonable probability that a doctor would be able to determine the cause of death from a post-exhumation autopsy. 22 *N.J.* at 557, 126 *A*.2d 886. Things, however, have changed since *Sheffield Farms*. We have recently seen the identification of the remains of England's King Richard III through DNA testing despite the fact that

 The second aspect of the judge's holding was her view that plaintiff's parentage evidence was self-serving. That evidence is self-serving only goes to its weight, *see DeVito v. Sheeran,* 165 *N.J.* 167, 197, 755 *A.*2d 1147 (2000), not its admissibility or its worth at the summary judgment stage. The question is not with the characterization of it but whether the evidence is sufficient to warrant the disturbing of decedent's remains.

To date, plaintiff is the only party to have provided evidential material to support her position on parentage. Indeed, she has provided a certification executed by her mother, who is likely the only living person able to provide personal knowledge on the issue. Defendants, on the other hand, have provided nothing. In their answer, they respond only that "[t]he parentage of [plaintiff] remains unknown and [plaintiff] is left to her proofs." Their only evidential response to the order to show cause was the certification of Rhonda Duty, who asserted that decedent was her uncle and that she spoke with plaintiff on January 24, 2010, to inform her that decedent had died. Duty also certified to telephone conversations she had with plaintiff a few days later and again in June 2010 to inform plaintiff that decedent died without a Will. She did not explain why she provided this information to plaintiff; nor did Duty refute any of the factual circumstances offered by plaintiff as evidence of her relationship to decedent.

 We are satisfied—particularly in light of the remarkable failure of defendants to deny plaintiff's claim that decedent was her father or any of the circumstances offered by plaintiff to support that claim—that plaintiff provided sufficient evidence to warrant disinterment. We do not, however, compel that result. Because disinterment is not favored, we conclude that the matter

---

he was buried in 1485. *See Richard III Dig: DNA Confirms Bones are King's, BBC,* www.bbc.co.uk/news/uk–england–leicestershire–21063882 (last visited May 2, 2013). Absent proof to the contrary—which defendants did not present—we have no cause to question the accuracy of plaintiff's expert's view that DNA taken from decedent's remains might prove plaintiff's relationship to decedent, who died and was embalmed a mere two years ago.

should first be explored at an evidential hearing at which time the judge might hear and consider the parties' testimony and assess their credibility. The parties may also pursue other scientific alternatives, to the extent there are any, for establishing or excluding paternity short of disturbing decedent's final resting place.[10] The decision to disinter should await—absent persuasive evidence that a delay may lessen the likelihood of an accurate DNA test—the judge's consideration of the weight of the evidence relating to parentage.

The order granting summary judgment in favor of defendants on the timeliness of the complaint and the order denying disinterment are reversed, and the matter is remanded for further proceedings in conformity with this opinion.

Reversed and remanded. We do not retain jurisdiction.

---

[10] The record is presently silent as to whether specimens taken from other family members might shed light on the question.