**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.  A-2897-17T3
                        A-4402-17T3

IN THE MATTER OF
THE ESTATE OF LUCY
GWENDOLYN KERSHAK,
        Deceased.

_____

Argued March 7, 2019 – Decided May 2, 2019

Before Judges Whipple and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Salem County, Docket Nos. CP-000010-2017 and CP-000032-2017.

Eric A. Feldhake argued the cause for appellant James Papiano in A-2897-17 (Kulzer & DiPadova, PA, attorneys; Eric A. Feldhake, on the briefs).

Eric A. Feldhake argued the cause for appellants Mary Ecret, James Papiano and Nancy Kershak in A-4402-17 (Kulzer & DiPadova, PA, attorneys; Eric A. Feldhake, on the briefs).

Michael L. Testa argued the cause for respondent Frances Papiano in A-2897-17 (Testa, Heck, Testa & White, PA, attorneys; Michael L. Testa, on the brief).

Michael L. Testa argued the cause for respondent Frances Papiano in A-4402-17 (Testa, Heck, Testa & White, PA, attorneys; Michael L. Testa and Anthony M. Imbesi, on the brief).

PER CURIAM

In these consolidated appeals involving a will contest, we review a January 19, 2018 order that denied James Papiano's motion for reconsideration summarily dismissing his complaint in which he attempted to set aside decedent, Lucy Gwendolyn Kershak's 2014 will and reinstate her 2008 will. He claims the 2014 will was the product of undue influence, surreptitiously named decedent's niece, Frances Denise Papiano as executrix, and bequeathed the majority of the estate to her. In addition, we consider two orders entered by another judge on April 23, 2018 granting summary judgment dismissing the second complaint filed by James[1] and Mary Ecret, and denying Nancy Kershak's motion to intervene. For the reasons that follow, we reverse these orders and remand for discovery and further proceedings.

---

[1] We refer to the parties by their first names for ease of reference and intending no disrespect. James, Nancy, and Mary are collectively referred to as "plaintiffs."

I.

When viewed under the summary judgment standard applicable to the motion judges prescribed by Rule 4:46-2(c), the record establishes that decedent died on September 30, 2016. She was survived by her brothers, Frank Papiano and Peter Papiano;[2] her niece, Frances; her nephew, James; her stepdaughter, Nancy; and her friend, Mary. Frances and James are siblings. On October 11, 2016, the December 29, 2014 will was admitted to probate by Frances. The 2008 will was prepared by decedent's "long-time attorney," William Gilson, Esq., executed by decedent on April 11, 2008, provided her brothers and Mary with legacies of $50,000 each, and created a trust for decedent's horses, who were cared for by Mary, and referred to by decedent as her "kids." Nancy was left a property at 768 Gershal Avenue in Pittsgrove Township. The residuary estate was bequeathed to James and Frances in equal shares. The seven-page 2008 will named Frank as executor and James as the alternate executor and trustee.

In contrast, the 2014 will was not drafted by Gilson, bequeathed $50,000 and another Pittsgrove property located on Gwynwood Drive to James, and left

_____

[2] Frank and Peter are not involved in these appeals.

A-2897-17T3

the residuary estate solely to Frances. Notably, the 2014 will did not provide a trust for the horses or bequeath anything to decedent's brothers, Nancy, or Mary. Frances was named executrix and James was named as alternate executor. The 2014 will was only three pages in length, and unlike the 2008 will, it did not delineate instructions for the executor and trustee relative to liquidating properties, making distributions, or authorizing the right to compromise any claims or litigation on behalf of the estate.

James certified that in Spring 2011, decedent gave him an envelope containing documents pertinent to her investments, which she asked him to store in a secure place because he would need them upon her death. As per her instructions, James placed the envelope in a safety deposit box.

Sometime in 2012, decedent's health declined.[3] Mary certified that decedent became confused and hallucinated, and regularly had "conversations" with her deceased husband. In his verified complaint, James stated decedent thought there were people or animals in her cellar and attic, and that her deceased husband and mother were present in the home. James further verified

---

[3] No medical records were mentioned in the record.

A-2897-17T3

that decedent began having issues with her balance, fell often, and would not walk to her mailbox for fear of falling.

At the end of 2013, decedent was diagnosed with a form of Parkinson's disease and was prescribed medication.[4] James felt that the medication had an adverse effect on decedent because she would "leave her disposable underwear out . . . food was left out, dishes were not cleaned, laundry was piled up, [and] the bed linens were soiled . . . ." James claims "a serious medical issue arose[,]" regarding his health in 2014 that prevented him from caring for decedent as he had been doing. Frances assumed decedent's care in the summer of 2014 and became her Power of Attorney (POA). Mary certified that after Frances took over decedent's care and until her demise, Frances would regularly speak for decedent in a controlling manner and finish her sentences. Plaintiffs argue that Frances unduly influenced decedent, who lacked requisite mental capacity, coerced her into revoking her 2008 will, and compelled her to name Frances as the primary beneficiary under the 2014 will.

By February 2015, aides were hired to assist decedent, who could no longer get out of a chair, control her bladder, speak, or hold a meaningful

---

[4] The name of the medication was not provided.

conversation. Pursuant to her POA, Frances arranged for decedent's horses to be sold in February 2016, unbeknownst to decedent and plaintiffs.

On October 11, 2016, Frances submitted the 2014 will to probate and notices of probate were issued. James received his notice in November 2016. He claims the only information Frances provided him with was the estate's debt, exceeding $200,000 in back taxes. After James's wife, Anna Papiano, returned from a trip in February 2017 and wanted to place her passport in the safety deposit box that contained the envelope decedent gave James years earlier, he discovered the 2008 will and compared it to decedent's 2014 will. He certified the 2014 will seemed "odd" and very different from what decedent indicated her intentions were to him, such as setting up a trust for her horses, and that he and Frances would share her estate assets equally. He felt the 2008 will expressed decedent's true intentions, unlike the 2014 version.

James filed a verified complaint on March 13, 2017, seeking to set aside probate of the 2014 will, admit the 2008 will to probate, remove Frances as executrix, and direct her to provide an accounting of the estate. Frances moved for summary judgment on July 21, 2017, in lieu of filing an answer, which James opposed. Frances's motion was granted on September 8, 2017. Thereafter, James filed a motion for reconsideration on September 28, 2017, and he also

6

filed a motion for leave to file and serve an amended complaint to include causes of action for undue influence, breach of fiduciary duty, and fraud on September 29, 2017. Frances opposed both motions. Following oral argument, both motions were denied on January 19, 2018. James filed a notice of appeal on March 2, 2018. Mary claims she had no knowledge of either will until she was served with a copy of James's motion for leave to file and serve an amended complaint on September 30, 2017.

While the motion for reconsideration was pending, James filed a second verified complaint, on November 16, 2017, joined by Mary, which involves the other part of this appeal. The second complaint sought to invalidate the 2014 will as a product of incapacity, undue influence, fraud, deceit, and for damages against Frances for breach of her fiduciary duty.

On December 27, 2017, Frances filed opposition to the motion to dismiss the November 2017 complaint. Nancy filed an emergent application on January 29, 2018, to intervene as an indispensable party in respect of the November 2017 complaint.

Frances moved for summary judgment on March 23, 2018, and also opposed Nancy's motion to intervene. Frank also filed a notice of motion to intervene and for leave to file and serve an amended complaint on April 3, 2018,

which Frances opposed. The second judge heard oral argument on April 20, 2018, and she granted Frances's motion for summary judgment, and denied both motions to intervene.

On appeal, James argues that the first judge abused his discretion in denying his motion for reconsideration, failed to apply case law regarding equitably tolling the time limits set forth in Rule 4:85, and placed undue weight on James's failure to object to the disposal of decedent's horses. Plaintiffs argue that summary dismissal of the November 2017 complaint by the second judge constituted an abuse of discretion as well and warrants reinstatement of the November 2017 complaint, discovery, and a hearing.

## II.

The standard of review for the granting of a motion for reconsideration, pursuant to Rule 4:49-2, is abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). "An abuse of discretion 'arises "when a decision is made without a rational explanation, inexplicably departed from established polices, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We have found that reconsideration is only appropriate for cases "which either (1) the

[c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

The decision is "within the sound discretion of the [trial] court and is to be exercised 'for good cause shown and in the service of the ultimate goal of substantial justice.'" Casino Reinvestment Dev. Auth. v. Teller, 384 N.J. Super. 408, 413 (App. Div. 2006) (quoting Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 264 (App. Div. 1987)). "This court may only disturb the decision below if it finds error which is 'clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2).

The first judge determined that James's complaint was time-barred because it was filed beyond the limitations established by Rule 4:85-1 which provides:

> If a will has been probated by the Surrogate's Court or letters of testamentary or of administration, guardianship or trusteeship have been issued, any person aggrieved by that action may, upon the filing of a complaint setting forth the basis for the relief sought, obtain an order requiring the personal representative, guardian or trustee to show cause why the probate should not be set aside or modified or the grant of

A-2897-17T3

> letters of appointment vacated, provided, however, the complaint is filed within four months after probate or of the grant of letters of appointment, as the case may be, or if the aggrieved person resided outside this State at the time of the grant of probate or grant of letters, within six months thereafter. If relief, however, is sought based upon [Rule] 4:50-1(d), (e), or (f) or [Rule] 4:50-3 (fraud upon the court) the complaint shall be filed within a reasonable time under the circumstances.

The time limitations set forth in Rule 4:85-1 have been recognized as a statute of limitations. See Marte v. Oliveras, 378 N.J. Super. 261, 267-68 (App. Div. 2005). Frances submitted the 2014 will for probate on October 11, 2016, and James did not contest it until March 13, 2017. In order to comply with Rule 4:85-1, his opposition should have been filed about a month earlier, on February 10, 2017.

Rule 4:85-2 allows the time period to be extended by thirty days "by order of the court upon a showing of good cause and the absence of prejudice." The judge determined that James failed to present good cause to justify the delay, because he

> possessed the 2008 will as early as 2011. He alleges his deceased aunt told him to open it upon her death, but for some reason he did not open the envelope containing the 2008 will in September 2016[,] and instead waited until mid-February 2017. He claims it is only then that he found he was not sharing equally in the residuary estate[,] and under the 2014 will his sister

10

was the sole legatee and executor. [James] himself is the cause of the delay.

The judge focused on a landmark case, In re Will of Landsman, 319 N.J. Super. 252, 263 (App. Div. 1999), which held that Rule 4:85-1 was relaxed when the executor "stonewalled" relatives about a will and estate information. He also addressed In re Karamus, 190 N.J. Super. 53, 62 (App. Div. 1983), where the time constraints were enlarged for an infant claimant, and In re Estate of Thomas, 431 N.J. Super. 22, 30 (App. Div. 2013), where we held the timeliness of an action for a putative daughter for a declaratory judgment that she was the intestate decedent's only child and sole heir was governed by the doctrine of laches as opposed to the two-year statute of limitations under N.J.S.A. 3B:5-10 and 3B:23-19(a) and (c). In his oral decision on summary judgment, the first judge stated that Thomas represented "a gross example of how miscarriage of justice was played out[,]" but that none of these cases were applicable because they are factually different than the current case. The judge found there was no good cause to extend the deadline, and the facts here were not analogous to those in Thomas.

These cases granted extensions based on Rule 4:50-1(f), which the judge did not consider on summary judgment, and by Rule 4:85-2. If relief is sought

under Rule 4:50-1(d), (e), or (f), the statute of limitations may be extended to "a reasonable time under the circumstances."  R. 4:85-1.  Rule 4:50-1 provides:

> [T]he court may relieve a party . . . from a final judgment or order for the following reasons:
>
> . . . .
>
> (d) the judgment or order is void;
>
> (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or
>
> (f) any other reason justifying relief from the operation of the judgment or order.
>
> [R. 4:50-1.]

An application for dismissal of this type of action based on timeliness requires consideration of both the specific time-bar contained in Rule 4:85-1 and the equitable considerations referred to in Rule 4:50-1.  The first judge did not address whether exceptional circumstances existed under Rule 4:50-1(f) when deciding the summary judgment motion but did so upon reconsideration, finding exceptional circumstances were absent to warrant relief under that rule because James did not "allege with any specificity that his . . . sister attempted to deceive,

12

mislead or misrepresent to him any of the matters relating to [decedent's] will."

We have said:

> [A]n action to set aside letters of administration filed beyond the time-frame contained in Rule 4:85-1 is informed by the principles recognized in the application of Rule 4:50-1(f). That rule permits relief from a judgment in the "interests of justice," the "boundaries [of which] are as expansive as the need to achieve equity and justice[.]" Consideration of this question is a truly fact-sensitive matter. Where either party raises a "sufficient question as to the merits of plaintiffs' case, courts may grant the application even where defendant's proof of excusable neglect is weak." In such instances, however, the court must be convinced that the movant's neglect was neither "willful nor calculated."
>
> [Thomas, 431 N.J. Super. at 34 (second alteration in original) (citations omitted).]

In order for a litigant to seek relief under Rule 4:50-1(f), it must be proven "that the circumstances are exceptional and that enforcement of the order or judgment would be unjust, oppressive or inequitable." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.6.1 on R. 4:50-1 (2019) (citing U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012)). While "[a] claim of undue influence on the testator or a lack of testamentary capacity is not within [Rule] 4:50-1(f)[,]" Karamus, 190 N.J. Super. at 59, there are other issues present, which require proper attention by the court. For example, there is a question of

13

fact as to whether James knew or should have known that the envelope decedent gave him included her 2008 last will and testament. And, this case potentially includes exceptional circumstances, which would warrant relief under Rule 4:50-1(f).

"Our courts have long adhered to the view that [Rule 4:50-1(f)'s] boundaries 'are as expansive as the need to achieve equity and justice.'" Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 98 (App. Div. 2014) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). Often, a plenary hearing is required to fully appreciate "whether justice is best served by the relaxation of the time-bar . . . ." Landsman, 319 N.J. Super. at 263. In Landsman, our Court found that undue influence over the decedent and "less than candid responses" to an attempt to gain information, justified the otherwise late challenge to the will. Ibid. Further, in Karamus, we allowed a nearly two-year delay, finding exceptional circumstances because the plaintiff was not noticed of probate. 190 N.J. Super. at 62.

In this case, decedent, who was not capable or caring for herself or maintaining a conversation, ostensibly created a subsequent will that vastly differed from her previous will. James claims he was unaware that the 2008 will existed until he discovered it in February 2017, and he had no reason to believe

A-2897-17T3

another will was made prior to that point. He promptly met with two attorneys and filed his verified complaint within a month of his discovery. There is no evidence that he willfully or deliberately delayed commencing his action, as found by the first judge. Moreover, no prejudice resulted from James's failure to move more expeditiously to assert his claims. Prejudice is a critical element in this analysis. The record does not reflect that administration of the estate was very far along or that a disposition of plaintiffs' claims will require undoing of anything already done.

Reconsideration should only be utilized for cases in which the court has "expressed its decision based upon a palpably incorrect or irrational basis" or "did not consider, or failed to appreciate the significance of probative, competent evidence . . . ." Cummings, 295 N.J. Super. at 384 (alteration in original) (quoting D'Atria, 242 N.J. Super. at 401). Reconsideration should not be pursued "merely because of dissatisfaction with a decision of the [trial] [c]ourt." D'Atria, 242 N.J. Super. at 401.

"The proper object of reconsideration is to correct a court's error or oversight." State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015) (finding that the trial court "failed to appreciate the significance of the explanation given" of statements by the witnesses). The judge abused his discretion in denying

reconsideration by failing to correctly interpret the case law in respect of <u>Rule</u> 4:50-1(f), and not <u>Rule</u> 4:85-2. Further, the first judge completely discredited the facts set forth in James's complaint regarding his explanation for the delay in filing, warranting reversal, discovery, and a plenary hearing.

III.

James further argues that the first judge did not consider the facts in his favor, contrary to the requisite summary judgment standard, and that the judge disregarded his certification, which stated: "In . . . the spring of 2011, [d]ecedent gave [him] an envelope with a number of documents in it . . . . [A]nd she asked that [he] put that information along with other documents away indicating that [he] would need it upon her death." James contends his certification could be inferred to mean he knew or should have known that the 2008 will was included within the documents, or that he did not, and that the judge mischaracterized this statement in his opinion by stating James "alleges his deceased aunt told him to open [the will] upon her death . . . ." We agree with James that the first judge made an inappropriate finding of fact on this critical issue.

Next, James argues that the first judge erred for not accepting his contention that Frances committed fraud by probating the 2014 will, which she knew was invalid due to decedent's incapacity, and finding his certification was

16

"self-serving."   When deciding a motion for summary judgment, "[t]he court must look at the evidence and inferences which may reasonably be deduced therefrom in a light most favorable to the plaintiff, and if reasonable minds could differ . . . the motion should be denied."  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995) (quoting Bell v. E. Beef Co., 42 N.J. 126, 129 (1964)). "The motion court must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case were tried."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016).  The record does not suggest that the judge gave favorable inferences to James as the non-moving party.  Moreover, James moved with alacrity once he received notice of probate. Thus, we reject the contention that James unduly delayed in seeking relief and we conclude that dismissal of his complaint on summary judgment grounds and denial of his motion for reconsideration was erroneous.

IV.

James next claims that the first judge improperly determined there was insufficient information to declare decedent incapacitated, and James's fraud claim was denied without a rational explanation.

17

Rule 4:50-2 provides that in cases of fraud, a motion shall be made within a year. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:50-2 (2019). Rule 4:50-3 states:

> A motion under [Rule] 4:50 does not suspend the operation of any judgment, order or proceeding or affect the finality of a final judgment, nor does this rule limit the power of a court to set aside a judgment, order or proceeding for fraud upon the court or to entertain an independent action to relieve a party from a judgment, order or proceeding.

In Tara Enterprises Incorporated v. Daribar Management Company, we upheld the interpretation of Rule 4:50-3 to allow that relief "may be obtained 'without limitation as to time.'" 369 N.J. Super. 45, 52 (App. Div. 2004) (quoting Shammas v. Shammas, 9 N.J. 321, 327 (1952)). The court did not allow an extension because the judgment plaintiff sought to amend "was not obtained by fraud but rather was obtained to provide redress for [] fraud[ulent]" conduct in a Pennsylvania court, and found that there was no authority to amend the trial court's judgment six years later by the addition of new parties. Id. at 53. The purported fraudulent conduct involved the holder of a promissory note confessing to judgment in Pennsylvania, after having a judgment entered against him in New Jersey. Id. at 51.

A-2897-17T3

The facts here are distinguishable as far less time had passed. Frances also misconstrues James's argument, arguing that his claims relative to decedent's incapacity are fraudulent. James contends that Frances submitted a fraudulent will to the probate court, and the first judge improvidently denied James an opportunity to conduct discovery on this disputed issue of material fact. We agree.

The statute of limitations for claims of fraud begins to run "only from the discovery of the fraud or the time when, by reasonable diligence, it could have been discovered." Lopez v. Swyer, 62 N.J. 267, 275 n.2 (1973). In Thomas, this court noted that a second cause of action sought by the plaintiff, to establish parentage, was filed within the two-year statute of limitations, and rejected "the contention that plaintiff unduly delayed in seeking relief." 431 N.J. Super. at 30. James arguably discovered potential fraud upon reading the 2008 will in February 2017, and moved to amend his complaint to allege fraud, deceit, undue influence, and incapacitation on September 28, 2017, with the one-year time period provided by Rule 4:50-1.

Further, decedent's incapacity should not have been determined solely based on the complaints and motions filed. James and plaintiffs should have been given the opportunity to serve paper discovery, subpoena decedent's

A-2897-17T3

medical records, and depose her doctors as to the disputed issue of her competency. The first judge expressed his concern "with the proofs" of decedent's incapacity, stating "[t]here is no evidence here other than the statements that are made which are completely self-serving by the movant which . . . [decedent] had hallucinations and thought she saw the images of her deceased husband and perhaps strangers in the house prior to her death." These allegations raise serious questions as to material facts, warranting reversal, discovery, and a plenary hearing.

V.

The companion appeal arises from the grant of Frances's motion for summary judgment and dismissing plaintiffs' November 6, 2017 complaint, as memorialized in an April 20, 2018 order, which was decided by a second judge who found the prayers for relief were barred by the doctrine collateral estoppel. We disagree.

The November 2017 complaint sought to invalidate the 2014 will as a product of incapacity, undue influence, fraud, and deceit, and sought damages against Frances for breach of her fiduciary duty.

With regard to Mary, the second judge agreed with the first judge finding that her claim was time-barred:

[I]t cannot be that a party by avoid the time constraints required by [Rule] 4:85-1, by bringing a claim that presenting a will for probate constitutes a fraud, that would then permit that party, who has already been barred by [R]ule 4:85-1 on all other claims, to then proceed in a second complaint alleging all the same facts except for that fraud claim, to then be permitted a second legal analysis and a second legal standard for the time period for which the claim has been brought.

The second judge further found that plaintiff's claims were untimely under Rule 4:85-1. Suspicious factors were raised by the second judge, such as Nancy allegedly not being informed of decedent's death but she continued to reside in the Pittsgrove home, that decedent's long-time attorney did not prepare the 2014 will, and the level of "stonewalling" that occurred in Landsman was absent here.

As to Mary's claims, the second judge found she was decedent's friend, and therefore, not entitled to notice of probate, and that Mary failed to comply with Rule 4:85-1 by not bringing this action within one year.

We apply the same standard as the trial court for summary judgment. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Globe Motor Co., 225 N.J. at 479. Further, a cause of action barred by a statute of limitations is also reviewed de novo. Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016).

A-2897-17T3

Mary also argues the statute of limitations of <u>Rule</u> 4:85-1 should be relaxed to excuse her one year delay in filing, and <u>Rule</u> 1:1-2 applies, which provides: "Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in injustice."

Mary also claims that the second judge failed to consider the factors set forth in <u>Jansson v. Fairleigh Dickenson University</u>, 198 N.J. Super. 190, 195 (App. Div. 1985) to determine whether <u>Rule</u> 1:1-2 or <u>Rule</u> 4:50-1(f) should be relaxed here. The court must consider: (1) "the extent of the delay"; (2) "the underlying reason or cause"; (3) the fault of the litigant; and (4) "the prejudice that would accrue to the other party." <u>Ibid.</u> In <u>Jansson</u>, we excused a three-year delay because the plaintiffs' attorney failed to answer interrogatories, and the case was dismissed. <u>Id.</u> at 192. Upon retaining new counsel, plaintiffs moved to vacate the dismissal, which was originally denied. <u>Ibid.</u> We found plaintiffs were "entirely blameless," and that defendant would not be prejudiced by allowing the action to continue. <u>Id.</u> at 195.

Mary relies upon the holdings in <u>Landsman</u>, <u>Karamus</u>, and <u>In re Green's Estate</u>, 175 N.J. Super. 595, 596 (App. Div. 1980), where eighteen-month,

22

twenty-three month, and eight-month delays, respectively, were permitted under Rule 4:50-1(f).

Mary also argues that she should have been granted an extension because: (1) the delay was ten months, which is comparable to the cases she cited; (2) she did not have standing to challenge the 2014 will because she was not a beneficiary, and could not bring an action until she was informed of the 2008 will; (3) she is without fault because she did not know about either will; and (4) Frances would not be disadvantaged or prejudiced by having to defend against her claim.

Rule 4:50-1(f) should be extended whenever necessary to achieve equity and justice. Ridge at Back Brook, 437 N.J. Super. at 98. There is a genuine issue of material fact in respect of what level of fault, if any, Mary bears in the delay of her filing warranting discovery and a plenary hearing. Frances will not be prejudiced by the continued maintenance of this action, other than having to defend against plaintiffs' claims on the merits, which is the "type of prejudice that carries no weight in these circumstances." Thomas, 431 N.J. Super. at 35.

In Thomas, we considered the question of "whether the 'interests at stake' and 'our court rules' overarching goal of promoting the fair and efficient administration of justice' would be undermined by the continued maintenance

23

of plaintiff's action . . . even though the complaint was filed . . . beyond the . . . time bar sustained in Rule 4:85-1." Thomas, 431 N.J. Super. at 32 (quoting Ragusa v. Lau, 119 N.J. 276, 283-84 (1990)). "Disposition of the competing equities necessarily turns on the factual circumstances, which, in this case, should have been viewed in the light most favorable to plaintiff . . . ." Ibid.

Our Court found in Thomas that Rule 4:50-1(f) applied because although the plaintiff knew the decedent had passed away, she did not know that he died intestate, or where to obtain information regarding the estate, and the executor refused to answer her inquires. Ibid. Finding that plaintiff did not willfully or deliberately delay the action, the Court found that exceptional circumstances existed to allow a ten month delay in filing. Similarly here, Rule 4:50-1(f) may have applicability because Mary knew that decedent passed away, but she did not have knowledge of the 2008 will until September 2017, and arguably no way of knowing that a prior will existed. We conclude summary judgment was prematurely granted as to Mary's claim.

While recognizing that no specific discovery rule is provided in Rule 4:85-1, Mary next argues that the second judge failed to consider situations where the rule was extended to persons unaware of their injury until after the statute of limitations expired. The discovery rule is a doctrine which provides that "in an

appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez, 62 N.J. at 272.

Mary relies on personal injury cases where the statute of limitations was tolled because plaintiffs were unaware of the negligence and harm inflicted upon them until after the statute of limitations had run.[5] Additionally, courts of equity have held that, "in fraud cases, the limitations period does not commence until the fraud was discovered, or through reasonable diligence should have been discovered." Catena, 447 N.J. Super. at 53.

> The discovery rule is "essentially a rule of equity." While statutes of limitations "are designed to stimulate litigants to pursue their actions diligently," the discovery rule mitigates "the unfairness of barring claims of unknowing parties." The discovery rule is designed "to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations."
>
> [Ibid. (citations omitted).]

---

[5] Lopez, 62 N.J. at 272 (discovery may be extended in a medical malpractice claim); New Mkt. Poultry Farms, Inc. v. Fellows, 51 N.J. 419, 425-26 (1968) (discovery rule may be extended when defendant committed negligence); Catena, 447 N.J. Super. at 55 (allowing an extension in a case involving fraud).

25

By analogy, Mary could not have known about any possible cause of action until James notified her of the 2008 will in September 2017, construing the facts in her favor. Her delay is not unexplained, and is plausible under these circumstances. We conclude that summary dismissal of Mary's complaint was erroneous.

Next, Mary joins in James's argument regarding the second trial judge's misinterpretation of Landsman. She contends that in Landsman, we extended the time restraints of Rule 4:85-1, and applied Rule 4:50-1(f) for two reasons: (1) the plaintiff was stonewalled by the executor, preventing her from discovering relevant information about the estate, and (2) the plaintiff was unable to establish standing to the will until she learned of the existence and terms of a prior will. Mary interprets this second prong to support her position that she did not learn of decedent's 2008 will until September 2017, thereby preventing her from having standing to challenge the 2014 will until then.

As stated above, in Landsman, we held that the plaintiff "had no knowledge of any prior wills and was stonewalled in her efforts to obtain such information" by the executor. Landsman, 319 N.J. Super. at 263. The trial court found the record supported plaintiff's claim that she did not learn of the prior will until eighteen months after probate. In a similar vein, Mary alleges she did

not learn of decedent's prior will until ten months after James notified her of same. There was no motive for Mary or plaintiffs to wait in commencing their actions, since delay would confer no benefit to them, and only had the potential to jeopardize their claims. We therefore reverse the summary judgment that dismissed Mary's and plaintiffs' complaint on timeliness grounds.

## VI.

The plaintiffs' final argument is that because the first judge erred in granting summary judgment to Frances, the decision to dismiss Nancy's motion to intervene was also an error. Rule 4:85-1 allows "[o]ther persons in interest . . . [to] apply to intervene in the action." Rule 4:33-1 provides:

> Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Nancy's main interest in this action is the Pittsgrove property, where she has lived with her family for more than a decade. This property was purchased by her father, who was decedent's husband. The property is not specifically mentioned in decedent's 2014 will, but was bequeathed to Nancy in the 2008 will.

27

A motion to intervene should be liberally viewed. <u>Atl. Emp'rs v. Tots & Toddlers Pre-School Day Care Center, Inc.</u>, 239 N.J. Super. 276, 280 (App. Div. 1990). Nancy, therefore, would have an interest in the action if the case went forward to determine whether fraud or deceit took place. The court, however, "has the discretion to determine the timeliness, under all the circumstances, of the intervention application, and may deny the application if deemed untimely." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2.3 on <u>R.</u> 4:33-1 (2019). Similar to Mary, Nancy was arguably unaware of the 2008 will until James discovered it and notified her. We reverse the order that denied Nancy's motion to intervene.

In summary, we reverse the orders granting summary judgment, denying reconsideration, and denying intervention. The matter is remanded for the purpose of conducting discovery, and for a plenary hearing consistent with our opinion. Jurisdiction is not retained.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2897-17T3